UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE ROE, <br><br> Plaintiff, <br><br> v. <br><br> JOHN DOE, <br><br> Defendant. | Civil Action No. 18-666 (CKK) |

MEMORANDUM OPINION
(February 26, 2019)

Defendant John Doe has filed a motion to dismiss one of the two counts in Plaintiff Jane Roe's Complaint. Upon consideration of the briefing,[1] the relevant legal authorities, and the record as a whole, the Court finds that Ms. Roe has failed to state a claim of negligence or gross negligence. Accordingly, the Court shall **GRANT** Mr. Doe's [9] Motion to Dismiss, in Part, Plaintiff's Complaint and shall **DISMISS** Count II of that Complaint.

## I. BACKGROUND

Ms. Roe's pertinent factual allegations are relatively straightforward, and the Court accepts them as true for purposes of this motion. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam); *see also* Mem. Op., *Roe v. Doe*, 319 F. Supp. 3d 422, 425 (D.D.C. 2018), ECF No. 15 (summarizing those allegations previously).

---

[1] The Court's consideration has focused on the following pleadings:

- Mem. in Supp. of Def. John Doe's Mot. to Dismiss, in Part, Pl. James Roe's Compl., ECF No. 9-2 ("Def.'s Mem.");
- Mem. of P&A in Opp'n to Def.'s Partial Mot. to Dismiss, ECF No. 11 ("Pl.'s Opp'n"); and
- Def. John Doe's Reply in Supp. of His Mot. to Dismiss, in Part, Pl.'s Compl., ECF No. 12 ("Def.'s Reply").

According to the Complaint, Plaintiff and Defendant met on the evening of ▮▮▮▮ 2017, during a gathering initiated by Ms. Roe's roommates at their D.C. apartment.  Compl., ECF No. 1, ¶¶ 11, 14.  Both Ms. Roe and Mr. Doe were from other states; each was living in the nation's capital only for the summer.  *Id.* ¶¶ 4-6, 9, 10.  The evening's agenda included a "pregame" for drinking purposes before the ostensible main event of heading to the club.  *Id.* ¶¶ 11-13, 15.  Both Ms. Roe and Mr. Doe drank alcohol during the pregame, to the point that Ms. Roe "became increasingly—and very visibly—intoxicated."  *Id.* ¶¶ 13, 15, 17.

As a 17-year-old, Ms. Roe planned to skip the clubbing, which she understood was off limits to her, but evidently she thought Mr. Doe, a rising college sophomore, would be among the partygoers departing for that venue.  *Id.* ¶¶ 12, 18, 19.  Although Ms. Roe had divulged her phone number to Mr. Doe, at his request, earlier in the evening, *id.* ¶ 16, there is no indication that she made a reciprocal request for his number or invited him to linger.  To her surprise, however, she discovered that Mr. Doe was in the restroom until after the others had left.  *Id.* ¶¶ 19, 20.

Despite Ms. Roe's repeated exhortations that Mr. Doe then hasten to join the group, he stayed and repeatedly insisted that she drink more alcohol, namely the remainder of a tequila bottle.  *Id.* ¶¶ 21-24.  "Hoping that it would make him leave her alone," she reluctantly complied.  *Id.* ¶¶ 24-27.  "As [Ms. Roe thereafter] slipped in and out of consciousness, [Mr. Doe] carried her to the bedroom, where he proceeded to force sexual intercourse upon her without her consent."  *Id.* ¶¶ 28, 29.  Only upon her slow realization and yell "in pain and fear, at the top of her lungs" did Mr. Doe discontinue, after some time.  *Id.* ¶¶ 30, 31.

On Ms. Roe's behalf, her father brought this action against Mr. Doe, seeking $3,000,000 in compensatory and punitive damages, in addition to interest and costs, for allegations

of sexual assault and battery (Count I), and negligence and gross negligence (Count II). *Id.* ¶¶ 33-41. Mr. has moved to dismiss only Count II.

While this motion was pending, Ms. Roe attained the age of majority and was substituted for her father as the real party in interest in this case. *See* Min. Order of Aug. 9, 2018.[2] The Court also denied Mr. Doe's motion to proceed in this case under pseudonym. *Roe*, 319 F. Supp. 3d 422. Briefing having concluded, Mr. Doe's motion is now ripe for resolution.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson*, 551 U.S. at 93. Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citing, e.g., *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Instead, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 556, 570; *Erickson*, 551 U.S. at 93. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The complaint must

---

[2] That substitution occurred after Ms. Roe's father had filed an opposition to Mr. Doe's partial motion to dismiss. Nevertheless, the Court shall refer to the opposition brief as though Ms. Roe herself, the true party in interest throughout, had made these arguments herself.

establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

There is no dispute that Ms. Roe properly invokes the Court's diversity jurisdiction over her common law claims. *See* 28 U.S.C. § 1332(a)(1); Compl. ¶¶ 1, 3-5, 33-41 (alleging diverse citizenship and a sufficient amount in controversy). Both parties cite D.C. standards for Ms. Roe's common law claims. *See, e.g.*, Def.'s Mem. at 3 n.1; Pl.'s Opp'n at 3. Accordingly, the Court finds that Ms. Roe has waived any available choice-of-law objection to applying the tort law standards of the District of Columbia. *See, e.g.*, *CSX Transp., Inc. v. Commercial Union Ins. Co.*, 82 F.3d 478, 482-83 (D.C. Cir. 1996) (suggesting that choice-of-law argument can be waived); *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 111 n.2 (D.D.C. 2010) (Kollar-Kotelly, J.) (citing *Davis v. Grant Park Nursing Home LP*, 639 F. Supp. 2d 60, 65 (D.D.C. 2009)) (finding waiver). In any case, the District of Columbia is not only the forum jurisdiction but also where all of the alleged activity occurred. *See Felder v. WMATA*, 174 F. Supp. 3d 524, 528 (D.D.C. 2016) (citing, e.g., *In re APA Assessment Fee Litig.*, 766 F.3d 39, 51, 53 (D.C. Cir. 2014); Restatement (Second) of Conflict of Laws § 145 (Am. Law Inst. 1971)).

Mr. Doe challenges Count II on two primary grounds. First, he argues that there is no gross negligence claim under D.C. law in this context, where no statute specifically provides for such a claim. Def.'s Mem. at 4-6. Second, Ms. Roe purportedly fails to sufficiently plead the elements of a negligence claim, which would be fatal to both the negligence and gross negligence claims. *See id.* at 4, 6-15.

The Court shall address these arguments in reverse order, for the second argument may be sufficient to dispose of Ms. Roe's Count II in entirety.  Even if the pleading deficiencies in Ms. Roe's negligence claim are not likewise dispositive of her gross negligence claim, however, the Court agrees that Ms. Roe has failed to show that a gross negligence claim is available to her.

For convenience, the Court shall refer to Ms. Roe's negligence and gross negligence allegations as attempting to plead separate claims.  Because the Court shall find that both the negligence and gross negligence allegations in Ms. Roe's Complaint independently warrant dismissal, the Court need not reach the issue of whether consolidating them in a single count was procedurally proper.  *See* Pl.'s Opp'n at 6-7; Def.'s Reply at 7-8.  Any of Ms. Roe's other arguments that the Court does not expressly address below are unavailing.

### A. Negligence Claim

In this jurisdiction, "a claim alleging the tort of negligence must show: (1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach." *Poola v. Howard Univ.*, 147 A.3d 267, 289 (D.C. 2016) (quoting *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011)) (alteration and internal quotation marks omitted).  In Count II, Ms. Roe pleads that Mr. Doe "owed [her] a duty of ordinary care"; that "[t]hrough his actions on the night of ▇ 2017, [he] breached this duty"; and "[a]s a direct and proximate result of [his] negligent and/or grossly negligent unconsented physical contact, [she] has sustained numerous physical injuries, as well as pain and mental anguish, and has incurred medical expenses and other damages." Compl., ECF No. 1, ¶¶ 38, 39, 41.

5

But this is effectively only "a formulaic recitation of the elements of a cause of action," which is insufficient to plead a valid claim. *Twombly*, 550 U.S. at 555. Moreover, the District of Columbia Court of Appeals has chastised this kind of deficiency specifically in the negligence context. In *Maddox v. Bano*, the complaint alleged that police officers "carelessly and negligently" arrested the plaintiff, but the court found that these "conclusory assertions" alone were not enough to establish breach of a duty. 422 A.2d 763, 764 (D.C. 1980).

Perhaps anticipating that difficulty, Ms. Roe identifies the formulaic allegations in her Count II as pled "in the alternative" to the specific factual allegations earlier in the Complaint. Compl., ECF No. 1, ¶ 37. But Ms. Roe makes no effort in her opposition brief to match up the factual allegations in her Complaint with the duty and breach elements of her negligence claim, which are the two elements that Mr. Doe challenges. *See* Def.'s Mem. at 6. The Court shall nevertheless consider whether the allegations in her Complaint are sufficient to satisfy the negligence elements.

The Court's inquiry into the negligence elements starts with Mr. Doe's duty, if any. "The foundation of modern negligence law is the existence of a duty owed by the defendant to the plaintiff. Negligence is a breach of duty; if there is no duty, there can be no breach, and hence no negligence." *Gilbert v. Miodovnik*, 990 A.2d 983, 988 (D.C. 2010) (quoting *N.O.L. v. District of Columbia*, 674 A.2d 498, 499 n.2 (D.C. 1996)) (internal quotation marks omitted). "Whether the facts in the record give rise to a legal duty . . . is 'an issue of law to be determined by the court as a necessary precondition to the viability of a cause of action for negligence.'" *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1034-35 (D.C. 2015) (quoting *Hedgepeth*, 22 A.3d at 810-11).

To answer this question of law, the D.C. Court of Appeals has sanctioned a "'foreseeability of harm test' that is determined, in large part, by the nature of the relationship between the parties."

*Hedgepeth*, 22 A.3d at 794 (quoting *Odemns v. District of Columbia*, 930 A.2d 137, 143 (D.C. 2007) (per curiam)). But "a determination of whether a duty exists is the result of a variety of considerations and not solely the relationship between the parties." *Bd. of Trs. of Univ. of Dist. of Columbia v. DiSalvo*, 974 A.2d 868, 871 (D.C. 2009). "Whether a duty exists is not simply a question of foreseeability [either]. It is ultimately a question of fairness and involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." *Gilbert*, 990 A.2d at 995 n.16 (quoting *Knippen v. Ford Motor Co.*, 546 F.2d 993, 1000 (D.C. Cir. 1976)) (internal quotation marks omitted). That said, the various factors to consider should not obscure what the D.C. Court of Appeals has characterized as "*the key* to determining whether the defendant had a legally enforceable duty to the plaintiff," namely the parties' relationship, if any. *Hedgepeth*, 22 A.3d at 794 (quoting *Bd. of Trs. of Univ. of Dist. of Columbia*, 974 A.2d at 871 n.1).

Under the foreseeability of harm test, a defendant typically only assumes a duty of care towards a plaintiff "[o]nce the defendant enters into a relationship." *Id.* at 794 & n.3 (recognizing "minimal duty—if any—owed to a party who is at arms' length"). In the context of a relationship, an individual is more likely to be held responsible for observing "foreseeable risks" to one or more others that could arise from her "failure to complete an undertaking." *Id.* at 794. Whether a duty arises in a particular case, however, requires assessing the "totality of the circumstances." *Gilbert*, 990 A.2d at 989-90.

"In negligence actions the standard of care by which the defendant's conduct is measured is often stated as 'that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances." *Tolu v. Ayodeji*, 945 A.2d 596, 603 (D.C. 2008) (per curiam) (quoting *Morrison v. MacNamara*, 407 A.2d 555, 560 (D.C. 1979)). The Court need not

7

consider more specific standards of care—established by a particular law or professional standard, for example—because Ms. Roe pleads only the "duty of ordinary care" in her negligence claim. Compl., ECF No. 1, ¶¶ 38, 39; *contra, e.g.*, *Casey v. McDonald's Corp.*, 880 F.3d 564, 567 (D.C. Cir. 2018) (interpreting standard of care for bars set by D.C. statute, and determining whether any "national standard of care" applies to security practices at a McDonald's restaurant); *cf. Gilbert*, 990 A.2d at 988 (observing that an articulation of negligence elements that requires "establishing the applicable standard of care" is "abbreviated" insofar as it "assumes that the defendant owes the plaintiff a duty of care").[3] But even if the standard is sometimes articulated differently, the level of care does not change. "This jurisdiction does not recognize varying standards of care depending upon the relationship of the parties but always requires reasonable care to be exercised under all the circumstances." *Pannu v. Jacobson*, 909 A.2d 178, 194 (D.C. 2006) (quoting *Blumenthal v. Cairo Hotel Corp.*, 256 A.2d 400, 402 (D.C. 1969)) (internal quotation marks omitted). Ms. Roe does not disagree. She simply argues that the "ordinary duty of *reasonable* care" applies to her negligence claim. Pl.'s Opp'n at 3 (emphasis added).

Yet, even a noteworthy connection between the parties may not establish a tort law duty to take the precautions of a reasonably prudent person. In *Newmyer v. Sidwell Friends School*, a psychologist working at one of a school's multiple campuses dated the mother of a student at another campus. 128 A.3d 1023, 1027-30. The psychologist took an interest in the well-being of the student and made what the D.C. Court of Appeals later characterized as "casual observations" about the student to the mother, as well as "friendly gestures" in reaching out to a school resource teacher to pass along the mother's concerns. *Id.* at 1035. In the fallout from the mother's divorce,

---

[3] "The questions of duty of care and standard of care are separate inquiries under [D.C. Court of Appeals] case law, but they often overlap." *Gilbert*, 990 A.2d at 990 n.5.

the student's father, on behalf of himself and the student, later sued the psychologist and the school asserting several types of negligence and other claims. The D.C. Court of Appeals upheld summary judgment for the psychologist and the school as to the negligence claims because "no reasonable jury could find that [the psychologist] owed a legal duty to [the student] pursuant to a physician-patient relationship or his position as a school counselor." *Id.* at 1036. Rather, the facts simply demonstrated "romantically-motivated actions" and "innocuous day-to-day interactions" that could not support a tort law duty. *Id.*

In this case, Ms. Roe alleges that she met Mr. Doe "for the first time" on the night at issue. Compl., ECF No. 1, ¶ 14. Accordingly, there is no basis on which to find that Ms. Roe and Mr. Doe were more than acquaintances. The Court is unaware of any specific duty running between acquaintances, even those involved in a sexual encounter on the first evening that they meet. The parties essentially remained at the "arms' length" stage, where this jurisdiction generally does not recognize a particular duty to foresee harm and prevent that foreseeable harm. There is less of a relationship here than in *Newmyer*—and even those facts were insufficient to trigger applicable tort law duties.

Nor did the fact that Ms. Roe "became increasingly—and very visibly—intoxicated" during the first part of the party automatically generate a duty on the part of Mr. Doe. Compl., ECF No. 1, ¶ 17. By way of comparison, the Court recalls public-duty doctrine. The District of Columbia, its emergency first responders, and other public officials lack a privately enforceable duty to members of the public, "absent a special relationship" with a specific person. *See, e.g.*, *Woods v. District of Columbia*, 63 A.3d 551, 553 (D.C. 2013) (quoting *Warren v. District of Columbia*, 444 A.2d 1, 3, 4 (D.C. 1981) (en banc)) (alteration and internal quotation marks omitted). Even if Ms. Roe were to appropriate that precedent, she still could not establish a

special relationship with Mr. Doe. In one version of the special-relationship test, neither of two elements would be satisfied here: "(1) a specific undertaking to protect a particular individual, and (2) justifiable reliance by the plaintiff." *Id.* (quoting *Morgan v. District of Columbia*, 468 A.2d 1306, 1314 (D.C. 1983) (en banc)) (internal quotation marks omitted). And for Ms. Roe to make the argument would miss the point: She offers no precedent to support extending the tort duties of a government and its officers to Mr. Doe—a college student whom Ms. Roe first met at a party, and whom she encouraged to leave her apartment when the party ended.

Turning to secondary considerations in this jurisdiction, there could be some issues of fairness, risk, and/or public interest lurking in this case of alleged sexual assault and battery. *See generally Hedgepeth*, 22 A.3d at 793-94 (recognizing that duty determination reflects policy assessment). But the Court would have to speculate as to what those specific considerations are and why they should create a duty. Ms. Roe says nothing about these issues, nor does she offer any precedent suggesting that they amount to a duty. To the extent that Ms. Roe has interests of these kinds, the Court shall assume that they are addressed by her allegations of sexual assault and battery and subsumed within any such claims. In any case, Ms. Roe does not discharge her burden to show that some accretion of considerations cognizable in this jurisdiction should result in a duty running from Mr. Doe to Ms. Roe.

Ms. Roe appears not to address the duty element at all, targeting instead Mr. Doe's defense to the breach element, which the Court need not reach. Even so, Ms. Roe seems to rely on a red herring. She maintains her right to plead sexual assault and battery and negligence claims in the alternative, evidently to help insure against finding in discovery that Mr. Doe lacked the requisite intent for an intentional tort. *See* Pl.'s Opp'n at 4-6 (citing Fed. R. Civ. P.

8(d)(2)).  That much is uncontroversial.  But she fails to plausibly plead negligence claims rather than simply the intentional torts.

It is instructive to consider suits against police officers for allegedly using excessive force. There, plaintiffs have often sought to recover both on assault and battery and on negligence causes of action.  *See, e.g.*, *Scales v. District of Columbia*, 973 A.2d 722 (D.C. 2009).  Although pleading these claims in the alternative is acceptable, the negligence claim must stand on its own:

> [I]f, in a case involving the intentional use of force by police officers, a negligence count is to be submitted to a jury, that negligence must be *distinctly pled* and based upon *at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself and violative of a distinct standard of care*.

*Id.* at 731 (quoting *Smith v. District of Columbia*, 882 A.2d 778, 792 (D.C. 2005)) (internal quotation marks omitted) (emphasis added).  In *District of Columbia v. Chinn*, one such police case, the D.C. Court of Appeals found that it was error to submit a negligence claim to the jury where the evidence at trial supported only the assault and battery claims.  839 A.2d 701, 704-05, 711 (D.C. 2003) ("Chinn did not argue that the officers mistakenly or negligently thought Chinn was armed; Chinn did not allege that the officers misperceived him as a threat."); *see also Scales*, 973 A.2d at 731 (quoting *Smith*, 882 A.2d at 793)) (remanding for further proceedings to include determining whether the plaintiff "present[ed] a basis independent of excessive force to support his negligence count") (internal quotation marks omitted).

Outside of the police force context, that court has likewise recognized that "the same course of conduct may support both a claim of assault and battery and a claim of negligence, provided that it is established that the defendant, *in the process of engaging in the conduct that included the intentional tort, was also breaching another recognized duty owed the plaintiff*."  *McCracken v. Walls-Kaufman*, 717 A.2d 346, 350-51 (D.C. 1998) (emphasis added) (alleged sexual assault by chiropractor in breach of professional obligations).

11

Again, Ms. Roe has not established any recognized duty that Mr. Doe owed to her. The Court need not speculate what kind of breach could follow. Rather, the Court finds here that Ms. Roe fails to state a claim for negligence.

**B. Gross Negligence Claim**

*1. Elements of a Gross Negligence Claim*

Ms. Roe pleads that "[Mr. Doe's] conduct on the night in question amounted to an extreme deviation from the ordinary standard of care and evinced wanton, willful, and reckless disregard or conscious indifference for the rights and safety of [Ms. Roe]. As such, [Mr. Doe] was grossly negligent under District of Columbia law." Compl., ECF No. 1, ¶ 40. Whereupon, she makes the allegations of injury and causation that the Court quoted above. *Id.* ¶ 41.

Although neither party specifically briefs the elements of a gross negligence claim under D.C. law, Mr. Doe does urge that his arguments about the negligence claim are dispositive of this claim as well. Def.'s Mem. at 4. Case law suggests that Ms. Roe is attempting to plead a standard for gross negligence that has been recognized in this jurisdiction in an unrelated context. *See District of Columbia v. Walker*, 689 A.2d 40, 44 (D.C. 1997) (interpreting the term "gross negligence" in a provision of the District of Columbia Employee Non-Liability Act, D.C. Code § 1-1212, to "require[ ] such an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others").[4]

The Court understands that any valid claim of gross negligence would require pleading what the ordinary standard of care would entail, and how the alleged tortfeasor deviated so

---

[4] This statute is now codified at D.C. Code § 2-412.

extremely from that standard. *See Walker*, 689 A.2d at 45 (stating that standard of care for "simple negligence" is "base point from which the magnitude of deviation can be assessed for purposes of the gross negligence inquiry"). A gross negligence claim that does not achieve those two objectives could presumably be dismissed for failure to state a claim. Ms. Roe does not expressly connect any of her specific allegations with either the ordinary standard of care or the extreme deviation.

The Court need not decide whether Ms. Roe satisfies a gross negligence standard, however. Rather, the Court shall find below that the gross negligence claim is unavailable to Ms. Roe.

*2. Availability of a Gross Negligence Claim in This Context*

The parties each cite *Hernandez v. District of Columbia* for the "general rule" that this jurisdiction "does not recognize degrees of negligence." Def.'s Mem. at 4 (quoting *Hernandez*, 845 F. Supp. 2d 112, 115-16 (D.D.C. 2012)) (internal quotation marks omitted); Pl.'s Opp'n at 7 (same). Yet, the parties disagree as to the scope of exceptions to that rule that could permit a gross negligence claim.

Interpreting two D.C. Court of Appeals decisions, *Hernandez* understands a gross negligence claim to be available "only in limited circumstances where gross negligence is a specific element of a claim or defense or for equitable reasons." 845 F. Supp. 2d at 116 (citations omitted). In the first of those cases, *District of Columbia v. Walker*, the D.C. Court of Appeals countenanced a gross negligence claim because the statute at issue provided that no less than gross negligence would be actionable in an emergency run case. *See* 689 A.2d at 42, 44 (citing D.C. Code § 1-1212). And in the equitable example, *Carleton v. Winter*, that court ruled that an

13

exculpatory clause in a contract could not limit liability for gross negligence, if any. 901 A.2d 174, 181-82 (D.C. 2006).

Mr. Doe points to a number of district court cases in this jurisdiction that dismiss a gross negligence claim when no applicable statute specifically provides for it. *See* Def.'s Mem. at 5 (collecting cases). One such case is *Hernandez*. There, the plaintiff argued that *Walker* furnished support for recognizing a gross negligence claim separate from his negligence claim against a sports complex operator for harms he sustained at an event. *Hernandez*, 845 F. Supp. 2d at 115. But the court recognized that *Walker* had "distinguished gross negligence from ordinary negligence because the [applicable] statute *required* such a distinction, not because the tort of gross negligence is itself a separate basis of liability under District of Columbia law." *Id.* at 116. Finding that no comparable statute—and apparently not equity either—dictated such treatment in the pending case, the court "dismiss[ed] as duplicative plaintiff's claim for gross negligence . . . as a separate basis for liability," which left the negligence claim in the case. *Id.* at 116.

Ms. Roe offers a conflicting interpretation of the relevant exception to the general rule: "[I]t might be said that the law of the District of Columbia does not recognize degrees of negligence unless it matters," as she claims it does when punitive damages are at stake. Pl.'s Opp'n at 7-8 (emphasis omitted). But this argument is flawed for at least two reasons. As *Hernandez* and *Walker* make clear, the standard for a gross negligence claim is not whether it is sufficiently important, or whether some relief turns upon it, as Ms. Roe seems to suggest. Evidently attempting to rescue her argument, Ms. Roe points to case law about the availability of punitive damages for gross negligence. Pl.'s Opp'n at 8 (citing *Spar v. Obwoya*, 369 A.2d 173, 180 (D.C. 1977)). But even if case law suffices in lieu of a statute providing for a gross negligence claim, this argument is still inapposite. Ms. Roe does not seek punitive

damages for her gross negligence (or negligence) claims; rather, she seeks those damages only for her sexual assault and battery claims. *See* Compl., ECF No. 1 (Counts I & II). Accordingly, that would not be a basis for finding that a gross negligence claim matters in this case, even if the import of the claim were the appropriate standard.

Nor does Ms. Roe make the argument that some equitable reason compels the availability of a gross negligence claim in this context.

The Court finds no basis for inferring that a gross negligence claim is available to Ms. Roe. Accordingly, the gross negligence claim must be dismissed.

## IV. CONCLUSION

For all of the foregoing reasons, the Court shall **GRANT** Mr. Doe's [9] Motion to Dismiss, in Part, Ms. Roe's Complaint. Count II of that Complaint is **DISMISSED**.

Mr. Doe shall answer or otherwise respond to the remainder of Ms. Roe's Complaint by no later than **MARCH 12, 2019**.

An appropriate Order accompanies this Memorandum Opinion.

Dated: February 26, 2019

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge